UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding    No. 4:20-mj-18

20-022-04

**APPLICATION FOR SEARCH AND
SEIZURE WARRANT "REDACTED"**

I, Matthew J. Miller, being duly sworn depose and say:

I am a Special Agent with the Federal Bureau of Investigation and have reason to believe that within the property fully described in Attachment A, attached hereto and incorporated herein by reference, located in the District of South Dakota, there is now concealed certain property, namely:  that fully described in Attachment B, attached hereto and incorporated herein by reference, which I believe is property constituting evidence of the commission of criminal offenses, contraband, the fruits of crime, or things otherwise criminally possessed, or property designed or intended for use or which is or has been used as the means of committing criminal offenses, concerning violations of 18 U.S.C. § 1341 (Mail Fraud); 18 U.S.C. §§ 1343 and 1349 (Wire Fraud and Conspiracy to Commit Wire Fraud), and 18 U.S.C. §§ 1956 and 1957 (Money Laundering and Conspiracy to Launder Monetary Instruments).

The facts to support a finding of Probable Cause are contained in my Affidavit filed herewith.

_____
Matthew J. Miller, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence on the 21st day of February, 2020, at Sioux Falls, South Dakota.

_____
VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A "REDACTED"

### Property to Be Searched

The property to be searched is currently in the custody of the Federal Bureau of Investigation in Sioux Falls, South Dakota, and the property is more fully described as:

1. Black Kenneth Cole laptop bag;

2. Samsung Galaxy S9+ Blackphone, IMEI # ████████████;

3. Lenovo laptop, serial number ████████;

4. Lenovo laptop, serial number █████████;

5. Toshiba hard drive, serial number ████████;

6. WD Elements hard drive, serial number ████████;

7. "Blackphone" mobile phone, IMEI # ████████;

8. NEXUS LG mobile phone, LG-H791;

9. Sony digital recorder, model ICD-UX560; and

10. Mophie hard drive, serial number ███████.

This warrant authorizes the physical search of Item #1 and authorizes the forensic examination of the listed digital media for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B "REDACTED"

### Particular Things to be Seized

All information described below that constitutes fruits, evidence, and instrumentalities of the violations identified in the Affidavit shall be subject to this Search Warrant:

1. Phone call documentation, including incoming, outgoing, missed, or attempted calls along with contact lists and their related identifying information and phone numbers, including deleted contacts along with data access and modification records, which may indicate when or how data is stored or used.

2. Electronic message documentation and content, including sent, unsent, received, or attempted messages whether they are texts, tweets, images, videos, e-mails, or some other form of electronic message, from any proprietary cellular software, or third party application including, but not limited to, applications such as Facebook, Facebook Messenger, Snapchat, and WhatsApp, among others.

3. Subscriber and account information.

4. Digital images, including photographs and/or videos which may tend to show ownership of the electronic devices along with evidence of bank records, wire transfer documents, transaction documents, money order documents, cashier check documents, ledgers, lists of other bank accounts, stolen PII, and other electronic records or media (CDs, DVDs, flash drives, etc.), contact information of others involved in the conspiracy to commit wire fraud and/or conspiracy to launder monetary instruments and the fruits of other crimes, and other evidence relating to a violation of 18 U.S.C. §§ 1341 (Mail Fraud), 1343 (Wire Fraud), 1349 (Conspiracy), and 1956 and 1957 (Money Laundering and Conspiracy).

5. Digital documents showing who used or owned the electronic devices at the time the things described in this warrant were created edited, or deleted, including, but not limited to, bills or other business-related documents, correspondence, photographs, phonebooks, documents, and browsing history including saved usernames and passwords.

6. Records that show the use of the internet to communicate with co-conspirators, including, but not limited to, records of Internet Protocol (IP) addresses used, firewall logs, caches, browser history, cookies, "bookmarked" or "favorite" web pages, search terms the user entered into any Internet search engine, and records of user-typed web addresses.

7.     Voicemail documentation and content which may tend to show the identity of co-conspirators and/or the objects of the conspiracies to commit wire fraud and/or launder monetary instruments.

8.     Global Positioning Satellite (GPS) data which may show travel to or from a location in a particular place and time, which may establish the location of suspect residences and storage facilities, identify co-conspirators, meeting locations, patterns of travel, or associate the user of the device to the offenses listed above in Paragraph 4, or link them to other crimes heretofore unknown.

9.     Digital documents or other items tending to identify co-conspirators, clients, investors, customers, and sources, including, but not limited to, contacts, electronic messages, notes, memoranda, photographs, address, and phone books, maps, organizers, or lists of names.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

The Government agrees to request another search warrant from the Court before it reviews data from the electronic storage media or electronically stored information seized pursuant to this warrant for purposes unrelated to this investigation.

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| In the Matter of the Search Regarding | No. 4:20-mj-18 |
| 20-022-04 | AFFIDAVIT IN SUPPORT OF<br>SEARCH WARRANT "REDACTED" |

STATE OF SOUTH DAKOTA )
                                              :SS
COUNTY OF MINNEHAHA )

    I, Matthew J. Miller, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

    1.    I make this affidavit in support of an application for a warrant to search the following items:

- Black Kenneth Cole laptop bag;
- Samsung Galaxy S9+ Blackphone, IMEI # ███████████;
- Lenovo laptop, serial number ███████;
- Lenovo laptop, serial number ███████;
- Toshiba hard drive, serial number ███████;
- WD Elements hard drive, serial number ███████;
- "Blackphone" mobile phone, IMEI # ███████;
- NEXUS LG mobile phone, LG-H791;
- Sony digital recorder, model ICD-UX560; and
- Mophie hard drive, serial number ███████.

    2.    I am a Special Agent of the Federal Bureau of Investigation and have served in that capacity for 27 years. During this time, I have received specialized training in white collar crime investigation by attending various seminars and classes specifically related to white collar crime. I have also worked a substantial number of white collar crime cases, including multiple cases related to mail fraud, wire fraud, and money laundering.

    3.    Information contained within this Affidavit is based on my investigation, training, and experience, as well as information developed and relayed to me by other law enforcement officers. I have set forth facts that I

believe are necessary to establish probable cause to seize instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 1341 (Mail Fraud), 1343 (Wire Fraud), 1349 (Conspiracy to Commit Wire Fraud), and 1956 and 1957 (Money Laundering and Conspiracy to Launder Monetary Instruments), as detailed in Attachment B, attached hereto and incorporated by reference. The IRS and FBI have been investigating what appears to be a scheme to defraud investors. The investigation, as detailed below, has revealed facts establishing probable cause that evidence, fruits, and instrumentalities of the scheme will be located in the computers, hard drives and phones detailed in Attachment A, attached hereto and incorporated herein by reference.

## RELEVANT STATUTES

4. The application for a Search Warrant, which this Affidavit is offered in support thereof, is being applied to seize instrumentalities, fruits, evidence, more particularly described in Attachment A, for violations of:

a. 18 U.S.C. § 1343, which makes it a crime to engage in a scheme or artifice to defraud another, and obtain the money and property of another, by false and fraudulent pretenses, that involves a wire transmission and interstate or foreign commerce for the purpose of executing the scheme or artifice.

b. 18 U.S.C. § 1341, which makes it a crime to engage in a scheme or artifice to defraud another and obtain the money and property of another, by false and fraudulent pretenses, that involves the use of the United States Postal Service.

c. 18 U.S.C. 1956 which makes it a crime to knowingly conduct or attempt to conduct certain financial transactions to conceal or disguise the nature of, location, source ownership or control of the proceeds of a specified unlawful activity.

d. 18 U.S.C. 1957 which makes it a crime to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from a specified criminal activity.

## OVERVIEW OF INVESTIGATION

5. 

[2]

6.    A joint FBI/IRS investigation has revealed that, between 2015 and the present,



**BACKGROUND**

7.

8.

9.

10.

█████████████████████████████████████████

### INVESTOR INTERVIEWS

11.   The FBI and IRS have interviewed multiple investors in this matter. Examples of three investors who had telephonic and or email communication with Nathan Peachey are summarized below:

12.   The FBI and IRS interviewed



13.   The FBI and IRS interviewed █████████████████████████. In the Fall of █████████████████████████████████████████████████

14.   The FBI and IRS interviewed ████████████████ In about ████████████████████████████████████████████



## FINANCIAL ANALYSIS

*Following the money sent to* █████

15.   The FBI/IRS reviewed domestic bank accounts controlled by █████ including: Bank of America Acct # ending in ████, registered to █████ Bank of America Acct # ending in ███, registered █████ and Wells Fargo Bank Acct # ending in ████, registered to █████ as well as a bank account controlled by █████, held at Bank of America (Acct # ending in ████), registered to █████

16.   This review determined the total amount of money from investors deposited into accounts controlled by █████ was $2,468,573.46. Of this amount, $2,056,243.81 was transferred to a █████ account at Bank of America controlled by █████; $283,651.31 appears to have been used personally by ████, and $118,000 was returned to investors.

17.   Of the $2,056,243.81 transferred to the █████ account at Bank of America controlled by █████, $1,125,000 was transferred to ████ in ████ (to an account registered to █████), $113,166.67 was transferred to █████ (to an account registered to █████, a Latvian citizen and an associate of █████), $157,095.50 was wired to █████ to purchase █████, $592,037.84 appears to have been used for personal expenses by █████, including equipment for his farm, and $55,000 appears to have been paid back to investors.

*Money in the* █████ *Accounts*

18.   The FBI/IRS have reviewed ████ bank records for accounts located in █████ to which investor money was transferred (account numbers █████ and █████ in the name █████) and determined the accounts were controlled by █████ and █████. █████ is listed in these documents as the secretary of █████ and █████ as its treasurer and both were signors on the accounts. The opening application shows █████ was a "global distributor of Essential Oils," but it appears the money transferred to the accounts was generated from the investment scheme previously described and not from the sale of Essential Oils.

19.   The ████ bank records show that, in addition to the $1.125 million obtained through █████ (described above in paragraphs 10, 11 and 12), an additional $5,000,000 was transferred to the █████ account at █████

[5]

███in ██████ in June of 2016, from a domestic bank account registered to ██████████████████ bringing the total transferred from the US to these accounts to $6,125,000 between late 2015 and early 2018.

20.   The ██████████ is relevant to a portion of the offense conduct alleged in a currently sealed superseding indictment in the District of South Dakota, charging ██████ and two others with conspiracies to commit wire fraud and launder monetary instruments ██████, as more fully set forth in Attachment C, attached hereto and incorporated herein by reference.   In addition, The ██████████ also relates to an active FBI investigation and state prosecution of two other individuals in the State of ██████.   I have reviewed the documents in this FBI file and the investors in that scheme were also told their money would be used to leverage funds for humanitarian causes and their principal was not at risk.

*How the money was spent*

21.   The ████ bank records did not reveal money being spent for humanitarian purposes.   Instead, the money appeared to be spent on real and personal property, including silver, a house, and a car as indicated below:

22.   Since January of 2018, ██████ purchased approximately ██████████ from the ██████████. in the United States, using funds from the ██████████ accounts at ██████.   The FBI and IRS have examined records concerning the purchase of this ████ and determined it was shipped to ██████████.   The ██████████ authorities (acting on a request from the FBI/IRS) have since seized about half of those coins, which were being stored in the house described in paragraph 21 below.

23.   In 2017 and 2018, the ████ accounts in the name ██████████ were used to *purchase a house and remodel it.*

- On April 27, 2017, ██████████ purchased a residence at ██████████████████, in the amount of approximately $1,330,000.   Sales records obtained show ████ ██████ as the purchaser of the property, and ██████ and ████ signed the purchase agreement for the residence.

- Between 2017 and 2018, payments in the approximate amount of $1,163,500 were made to renovate and furnish the residence at ██████████.   The FBI/IRS interviewed the general contractor for the house, ██████████, who said ████ ██████ insisted on only the very finest and highest end materials for the remodel.

[6]

24.   On December 13, 2016, ████████████ purchased, for $83,000, a *Mercedes Benz GLC250 4M,* using funds from the ████████████ accounts from the Bertel O Steen Mercedes-Benz dealership in ████████. In October 2019, ██████ was interviewed by IRS/FBI case agents. ██████ stated that he used part of the "investment" funds to purchase the vehicle.

25.   ██████ stated that The ████████ is an "ecclesiastical group" which is "one of the assignments we took on." ██████ explained, "We took money under an ecclesiastical agreement. There were ecclesiastical terms and conditions. It was an international group and I'm a small part of it." ██████ stated that money from ███ was deposited into the ████████████ bank account in ████████. ██████ also indicated that the funds were used for "humanitarian purposes;" specifically, he said it had been used first to build a "giant house" which serves as "the international headquarters for the Christian Charity Foundation in Norway" and some of it had been used to purchase ███.

## ARREST OF ████████████

26.   I am aware that, on December 6, 2019, ████████████ returned from Guinea to the United States via an aircraft and was taken into custody by the U.S. Customs and Border Patrol Service in John F. Kennedy Airport, located in Queens, New York, based upon a federal arrest warrant issued in this case.

27.   I have spoken with Kareem J. Mckenzie, the Border Patrol Agent who took ██████ into custody. Mckenzie turned ████████ over the US Marshal's Service but was left with a laptop bag belonging to ████. ████████ laptop bag contained several electronic items detailed in Attachment A. Since the Marshal's do not accept personal property, Mckenzie inventoried and turned over the items to the FBI because the warrant came from its investigation.

28.   Mckenzie informed me that he turned over the following items to the FBI airport office at JFK International:

- Black Kenneth Cole laptop bag;
- Samsung Galaxy S9+ Blackphone, IMEI # ████████████;
- Lenovo laptop, serial number ████████;
- Lenovo laptop, serial number ████████;
- Toshiba hard drive, serial number ████████;
- WD Elements hard drive, serial number ████████████;
- "Blackphone" mobile phone, IMEI # ████████████;
- NEXUS LG mobile phone, LG-H791;
- Sony digital recorder, model ICD-UX560; and
- Mophie hard drive, serial number ████████████.

## USE OF COMPUTERS/PHONES

29.    Based on the foregoing, I believe probable cause exists showing that ███████████ utilized computers and telephones in perpetrating his scheme to defraud based on interviews with ████████████████████████████ ██ , each of whom indicated they had telephonic and or email contact with ███████ regarding the scheme (see Paragraphs 10, 11 and 12).

30.    Based on the foregoing, I also believe probable cause exists showing that ██████████ utilized computers and telephones in perpetrating his scheme to defraud because I have personally observed emails to and from him concerning the scheme while reviewing materials seized during a search warrant of the house at ████████████████████████ .

31.    I know that computers, electronic storage devices, and phones may be important to a criminal investigation in two distinct ways:  (1) the objects themselves may be contraband, evidence, instrumentalities, or fruits of crime, and/or (2) the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data.  In this case, I request permission to search the contents and all electronically stored information within the electronic storage devices described above and in Attachment A, attached hereto and incorporated herein by reference. Based upon the totality of the investigation, I have reason to believe there is probable cause to search above-described electronic storage devices and that the search may recover bank records, wire transfer documents, money order documents, cashier check documents, ledgers, lists of other bank accounts, stolen PII, and other electronic records or media (CDs, DVDs, flash drives, etc.), text messages, electronic-mail messages, and contact information of others involved in the conspiracy to commit wire fraud (18 U.S.C. §§ 1343 and 1349), conspiracy to launder monetary instruments (18 U.S.C. §§ 1956 and 1957), and the fruits of other crimes, including mail fraud, wire fraud, and money laundering, as more fully described in Attachment B, attached hereto and incorporated herein by reference.

32.    At the time the aforementioned devices were seized upon ███████ arrest at JFK, a forensic search of these devices on site was not possible because we did not have the technical equipment required to conduct the search nor a qualified person to do so.  It is common practice for these devices to be forensically searched at an offsite location that has the technical personnel and the correct forensic equipment to conduct the search in a controlled setting.

33.    Based upon the aforementioned, I am requesting that the court authorize a search of the aforementioned electronic devices at an offsite law enforcement facility that has the technology and capability to conduct the forensic examination.  I further request that the examining agency be allowed to

examine/search the seized electronic devices at a date and time determined by that agency.

34.    I have spoken with FBI Forensic analyst Elizabeth Blakely who informed me that she has examined the created dates of the files on the devices listed above and determined there are files dating back to 2002 on at least one of the computers.   Blakey has also informed me that there are files on the electronic devices which do not have "created dates" associated with them.  Such files are excluded from any electronic download/search which is limited by a date range.

## **CONCLUSION**

Based on the information provided, there is probable cause to conclude that evidence, fruits, and instrumentalities of the scheme and criminal offenses, as detailed in Attachment B that is attached hereto and incorporated by reference, that may constitute mail fraud (18 U.S.C. § 1341), wire fraud and conspiracy to commit wire fraud (18 U.S.C. §§ 1343 and 1349), and money laundering and conspiracy to launder monetary instruments (18 U.S.C. §§ 1956 and 1957) will be located in the computers, hard drives, and phones detailed in Attachment A, attached hereto and incorporated herein by reference.

Matthew J. Miller, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence on the 21st day of February, 2020, at Sioux Falls, South Dakota.

Veronica L. Duffy
United States Magistrate Judge

## ATTACHMENT A "REDACTED"

### Property to Be Searched

The property to be searched is currently in the custody of the Federal Bureau of Investigation in Sioux Falls, South Dakota, and the property is more fully described as:

1. Black Kenneth Cole laptop bag;

2. Samsung Galaxy S9+ Blackphone, IMEI #█████████████;

3. Lenovo laptop, serial number ██████████;

4. Lenovo laptop, serial number ██████████;

5. Toshiba hard drive, serial number ██████████;

6. WD Elements hard drive, serial number ██████████;

7. "Blackphone" mobile phone, IMEI #██████████;

8. NEXUS LG mobile phone, LG-H791;

9. Sony digital recorder, model ICD-UX560; and

10. Mophie hard drive, serial number ██████████.

This warrant authorizes the physical search of Item #1 and authorizes the forensic examination of the listed digital media for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B "REDACTED"

### Particular Things to be Seized

All information described below that constitutes fruits, evidence, and instrumentalities of the violations identified in the Affidavit shall be subject to this Search Warrant:

1.     Phone call documentation, including incoming, outgoing, missed, or attempted calls along with contact lists and their related identifying information and phone numbers, including deleted contacts along with data access and modification records, which may indicate when or how data is stored or used.

2.     Electronic message documentation and content, including sent, unsent, received, or attempted messages whether they are texts, tweets, images, videos, e-mails, or some other form of electronic message, from any proprietary cellular software, or third party application including, but not limited to, applications such as Facebook, Facebook Messenger, Snapchat, and WhatsApp, among others.

3.     Subscriber and account information.

4.     Digital images, including photographs and/or videos which may tend to show ownership of the electronic devices along with evidence of bank records, wire transfer documents, transaction documents, money order documents, cashier check documents, ledgers, lists of other bank accounts, stolen PII, and other electronic records or media (CDs, DVDs, flash drives, etc.), contact information of others involved in the conspiracy to commit wire fraud and/or conspiracy to launder monetary instruments and the fruits of other crimes, and other evidence relating to a violation of 18 U.S.C. §§ 1341 (Mail Fraud), 1343 (Wire Fraud), 1349 (Conspiracy), and 1956 and 1957 (Money Laundering and Conspiracy).

5.     Digital documents showing who used or owned the electronic devices at the time the things described in this warrant were created edited, or deleted, including, but not limited to, bills or other business-related documents, correspondence, photographs, phonebooks, documents, and browsing history including saved usernames and passwords.

6.     Records that show the use of the internet to communicate with co-conspirators, including, but not limited to, records of Internet Protocol (IP) addresses used, firewall logs, caches, browser history, cookies, "bookmarked" or "favorite" web pages, search terms the user entered into any Internet search engine, and records of user-typed web addresses.

7.     Voicemail documentation and content which may tend to show the identity of co-conspirators and/or the objects of the conspiracies to commit wire fraud and/or launder monetary instruments.

8.     Global Positioning Satellite (GPS) data which may show travel to or from a location in a particular place and time, which may establish the location of suspect residences and storage facilities, identify co-conspirators, meeting locations, patterns of travel, or associate the user of the device to the offenses listed above in Paragraph 4, or link them to other crimes heretofore unknown.

9.     Digital documents or other items tending to identify co-conspirators, clients, investors, customers, and sources, including, but not limited to, contacts, electronic messages, notes, memoranda, photographs, address, and phone books, maps, organizers, or lists of names.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

The Government agrees to request another search warrant from the Court before it reviews data from the electronic storage media or electronically stored information seized pursuant to this warrant for purposes unrelated to this investigation.

ATTACHMENT C "REDACTED"

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 19-40097-KES |
| Plaintiff,<br><br>v. | REDACTED SUPERSEDING INDICTMENT |
| LORIN WILLIAM ROSIER, NATHAN PEACHEY, and JOHN RICK WINER, | Conspiracy to Commit Wire Fraud 18 U.S.C. §§ 1343 and 1349 |
| Defendants. | Conspiracy to Launder Monetary Instruments 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h) |
| | Wire Fraud 18 U.S.C. §§ 1343 |
| | Laundering of Monetary Instruments and Aiding and Abetting 18 U.S.C. §§ 2 and 1956(a)(1)(B)(i) |

The Grand Jury charges:

## Count 1

### (Conspiracy to Commit Wire Fraud – 18 U.S.C. §§ 1343 and 1349)

I.   Conspiracy

Beginning at a time unknown, but no later than on or about 2015, and continuing through the date of this Superseding Indictment, in the District of South Dakota and elsewhere, the Defendants, Lorin William Rosier, Nathan Peachey, and John Rick Winer, with others known and unknown to the Grand Jury, did conspire to commit the offense of wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349.   Defendants Lorin William Rosier, Nathan Peachey, and

John Rick Winer willfully and unlawfully devised and intended to devise a scheme and artifice to defraud and to obtain money and property from others by means of false and fraudulent pretenses, representations, and promises.

II.    Parties and Entities

At times relevant to this charging document and to each count alleged herein, the following individuals and entities were involved in the conspiracies and substantive charges.

A.    Defendant Lorin William Rosier

Lorin William Rosier resided in and operated from Norway, among other places, and he is a co-conspirator in the fraud scheme. Rosier oversaw the fraud scheme, and he was aided by his co-defendants and others known by the Grand Jury to receive fraud proceeds via international wire transfers and to then expend those proceeds. Rosier served as the head of the entities utilized in the fraud scheme. After his receipt of funds, Rosier would transfer or wire funds to his co-conspirators and others known and unknown to the Grand Jury, and he also would use funds on personal expenditures.

B.    Defendant Nathan Peachey

Nathan Peach resided in and operated from Pennsylvania, among other places, and he is a co-conspirator in the fraud scheme. Peachey aided in soliciting millions of dollars from investors in the United States, and he received funds from others who were involved in the fraud scheme. Funds obtained by and through Peachey were, in part, laundered through and into domestic and international bank accounts. After his receipt of funds, Peachey would transfer

[2]

or wire funds to his co-conspirators and others known and unknown to the Grand Jury, and he also would use funds on personal expenditures.

C. Defendant John Rick Winer

John Rick Winer resided and operated from New Mexico, among other places, and he is a co-conspirator in the fraud scheme. Winer recruited individuals to invest in various projects, and he solicited funds that were obtained through the fraud scheme. Winer received funds in various forms, including, but not limited to, check, cash, and wire transfer, and he received funds in various ways, including, but not limited to, by mail, through hand-to-hand delivery, and via electronic transfer. After his receipt of funds, Winer would transfer or wire funds to his co-conspirators and others known and unknown to the Grand Jury, and he also would use funds on personal expenditures.

D. Various Entities

Defendants Lorin William Rosier, Nathan Peachey, and John Rick Winer utilized, independently or jointly, entities to perpetrate the counts alleged in this charging document, including, but not limited to: AG Enterprises, L.L.C.; House of Winer; Jacobs Provision Trust; The Joseph Project; Jericho Outreach; Jericho Outreach – Norway; Christian Charity Foundation; G47 Initiative.

III. Scheme and Artifice to Defraud

At all times relevant to this case and in furtherance of the conspiracy, the scheme and artifice to defraud included the following acts and omissions by the defendants, independently or jointly:

[3]

Defendants Lorin William Rosier, Nathan Peachey, and John Rick Winer, and others known and unknown to the Grand Jury, informed investors that the monies provided to one or more of the co-conspirators would be used for charitable and humanitarian projects and that there would be a return on investments.

Defendants Lorin William Rosier, Nathan Peachey, and John Rick Winer, and others known and unknown to the Grand Jury, informed investors that the monies provided to one or more of the co-conspirators would not be expended on personal expenses.

Investor money was not used for charitable or for humanitarian projects, and investors have not received a return on investments relating to the monies provided to Defendants Lorin William Rosier, Nathan Peachey, or John Rick Winer.

Defendants Lorin William Rosier, Nathan Peachey, and John Rick Winer sought and obtained monies, monetary instruments, and money transfers from individuals who were the victims of the scheme, and Defendants fraudulent conduct impacted victims from around the United States and elsewhere, including, but not limited to, South Dakota, Minnesota, Arizona, Colorado, Pennsylvania, and North Carolina.

Defendants Lorin William Rosier, Nathan Peachey, and John Rick Winer acted willfully, for the purpose of enriching themselves and others, knowing of the unlawful purpose of the scheme, in whole or in part, when they participated in it.

[4]

IV.     Wires

At times relevant to this case, in the District of South Dakota and elsewhere, Defendants Lorin William Rosier, Nathan Peachey, and John Rick Winer, and others known and unknown to the Grand Jury, having devised the above-described scheme and artifice to defraud, caused communications to be sent between South Dakota and elsewhere, and did knowingly use and cause communications to be transmitted in interstate or foreign commerce, by means of a wire communication, writings, signs, signals, and sounds, for the purpose of executing such scheme and artifice.

Defendants' acts and omissions were in violation of 18 U.S.C. §§ 1343 and 1349.

## Count 2

**(Conspiracy to Launder Monetary Instruments –
18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h))**

The allegations in Count 1 of this Superseding Indictment are hereby realleged and incorporated by reference.

Beginning at a time unknown, but no later than on or about 2015, and continuing through the date of this Superseding Indictment, in the District of South Dakota and elsewhere, the Defendants, Lorin William Rosier, Nathan Peachey, and John Rick Winer, did knowingly and intentionally combine, conspire, confederate, and agree together, with others known and unknown to the Grand Jury, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, to wit:   depositing, transferring, wiring, and withdrawing U.S. Currency, foreign currency, and

funds at financial institutions, which involved the proceeds of a specified unlawful activity, that is, wire fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions Defendants Lorin William Rosier, Nathan Peachey, and John Rick Winer knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, all in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h).

### Counts 3 through 6

### (Wire Fraud – 18 U.S.C. §§ 1343 and 1349)

The allegations in Count 1 of this Superseding Indictment are hereby realleged and incorporated by reference.

On or about the dates set forth below, in the District of South Dakota and elsewhere, the Defendant, John Rick Winer, having devised and intending to devise a scheme and artifice to defraud others known to the Grand Jury and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted and attempted to be transmitted by means of wire communications in interstate and foreign commerce a writing, sign, signal, and sound for the purpose of executing the withdrawal of funds between banking accounts belonging to others known to the Grand Jury to banking accounts owned or controlled by John Rick Winer, having the following transaction activity:

| Count | Date | Description and Receiver |
|-------|------|-------------------------|
| 3 | 5/20/2016 | Wire transmission in the amount of $119,414.46 between Great Western Bank in the State and District of South Dakota and Wells Fargo in the State and District of New Mexico. |
| 4 | 5/23/2016 | Wire transmission in the amount of $293,000.00 between First Premier Bank in the State and District of South Dakota and Bank of America in the State and District of New Mexico. |
| 5 | 6/7/2016 | Wire transmission in the amount of $150,000.00 between First Premier Bank in the State and District of South Dakota and Bank of America in the State and District of New Mexico. |
| 6 | 10/7/2016 | Wire transmission in the amount of $108,000.00 between First Premier Bank in the State and District of South Dakota and Bank of America in the State and District of New Mexico. |

All are in violation of 18 U.S.C. §§ 1343 (relating to wire fraud) and 1349 (relating to attempts).

## Counts 7 through 16

### (Laundering of Monetary Instruments – 18 U.S.C. §§ 2 and 1956(a)(1)(B)(i))

The allegations in Count 1 of this Superseding Indictment are hereby realleged and incorporated by reference.

On or about the dates set forth below, in the District of South Dakota and elsewhere, the defendant or defendants specified below did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit, deposit, transfer, wire, or withdrawal of funds between accounts, which involved the proceeds of a specified unlawful activity, that is, wire fraud, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and

[7]

attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

| Count | Date | Defendant(s) | Transaction |
|---|---|---|---|
| 7 | 6/15/2016 | John Rick Winer | Transfer of $170,000.00 between Wells Fargo account belonging to Winer and AG Enterprises, L.L.C. to Bank of America account belonging to House of Winer. |
| 8 | 7/1/2016 | John Rick Winer and Nathan Peachey | Transfer of $433,000.00 between Bank of America account belonging to House of Winer to Bank of America account belonging to Jacobs Provision Trust. |
| 9 | 7/6/2016 | John Rick Winer and Nathan Peachey | Transfer of $99,000.00 between Bank of America account belonging to Jacobs Provision Trust to Bank of America account belonging to Jericho Outreach. |
| 10 | 7/6/2016 | Nathan Peachey and Lorin William Rosier | Transfer of $150,000.00 between Bank of America account belonging to Jericho Outreach to DNB Bank account in Norway belonging to Jericho Outreach – Norway. |
| 11 | 8/31/2016 | John Rick Winer and Nathan Peachey | Transfer of $400,000.00 between Bank of America account belonging to Jacobs Provision Trust to Bank of America account belonging to Jericho Outreach. |
| 12 | 9/1/2016 | Nathan Peachey and Lorin William Rosier | Transfer of $300,000.00 between Bank of America account belonging to Jericho Outreach to DNB Bank account in Norway belonging to Jericho Outreach – Norway. |
| 13 | 10/4/2016 | John Rick Winer Nathan Peachey | Transfer of $50,000.00 between Bank of America account belonging to Jacobs Provision Trust to Bank of America account belonging to Jericho Outreach. |
| 14 | 10/7/2016 | Nathan Peachey and Lorin William Rosier | Transfer of $155,000.00 between Bank of America account belonging to Jericho |

[8]

| | | | Outreach to DNB Bank account in Norway belonging to Jericho Outreach – Norway. |
|---|---|---|---|
| 15 | 12/13/2016 | Nathan Peachey | Transfer payment of approximately $83,000.00 from DNB Bank in Norway to purchase Mercedes vehicle in Norway. |
| 16 | 5/15/2017 | Nathan Peachey and Lorin William Rosier | Transfer payment of approximately $1,330,000.00 from DNB Bank in Norway to purchase residence in Norway. |

All are in violation of 18 U.S.C. §§ 2 and 1956(a)(1)(B)(i).

**Forfeiture Allegation Relating to Counts 1 and 3 through 6**

The allegations in Counts 1 and 3 through 6 of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(c), and 28 U.S.C. § 2461(c).

Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, upon conviction of the offenses set forth in Counts 1 and 3 through 6 of this Superseding Indictment, Defendants Lorin William Rosier, Nathan Peachey, and John Rick Winer shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

If any of the property described above, as a result of any act or omission of the defendant:

        a.     cannot be located upon the exercise of due diligence;

        b.     has been transferred or sold to, or deposited with, a third party;

        c.     has been placed beyond the jurisdiction of the court;

        d.     has been substantially diminished in value; or

[9]

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

**Forfeiture Allegation Relating to Counts 2 and 7 through 16**

The allegations contained in Counts 2 and 7 through 16 of this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(1).

Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of an offense in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h) as alleged in Counts 2 and 7 through 16 of this Superseding Indictment, Defendants Lorin William Rosier, Nathan Peachey, and John Rick Winer shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property.

If any of the property described above, as a result of any act or omission of the defendant[s]:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property

[10]

pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A TRUE BILL:

**Name Redacted**

_____

Foreperson

RONALD A. PARSONS, JR.
United States Attorney

By:

Maximum Penalties:

[11]

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

In the Matter of the Search Regarding   No. 4:20-mj-18

20-022-04

**SEARCH AND SEIZURE WARRANT**
**"REDACTED"**

TO:   ANY AUTHORIZED LAW ENFORCEMENT OFFICER

An application by a federal law enforcement officer or an attorney for the government requests the search of the following property located in the District of South Dakota:  that fully described in Attachment A, attached hereto and incorporated herein by reference.

I find that the affidavit, or any recorded testimony, establish probable cause to search and seize the property described above, and that such search will reveal property constituting evidence of the commission of criminal offenses, contraband, the fruits of crime, or things otherwise criminally possessed, or property designed or intended for use or which is or has been used as the means of committing criminal offenses, concerning violations of 18 U.S.C. § 1341 (Mail Fraud); 18 U.S.C. §§ 1343 and 1349 (Wire Fraud and Conspiracy to Commit Wire Fraud), and 18 U.S.C. §§ 1956 and 1957 (Money Laundering and Conspiracy to Launder Monetary Instruments), as fully described in Attachment B, attached hereto and incorporated herein by reference.

VLD

**YOU ARE COMMANDED** to execute this warrant on or before
3-8-2020                           (not to exceed 14 days)
☒ in the daytime – 6:00 a.m. to 10:00 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the undersigned Judge.

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized,

☐ for _____ days *(not to exceed 30)*.

☐   until, the facts justifying, the later specific date of _____.

2-21-2020 at 1:30pm CST at Sioux Falls, South Dakota

Date and Time Issued

VERONICA L. DUFFY
UNITED STATES MAGISTRATE JUDGE

[2]

## ATTACHMENT A "REDACTED"

### Property to Be Searched

The property to be searched is currently in the custody of the Federal Bureau of Investigation in Sioux Falls, South Dakota, and the property is more fully described as:

1. Black Kenneth Cole laptop bag;

2. Samsung Galaxy S9+ Blackphone, IMEI #▮▮▮▮▮▮▮▮▮▮;

3. Lenovo laptop, serial number ▮▮▮▮▮▮▮;

4. Lenovo laptop, serial number ▮▮▮▮▮▮▮▮;

5. Toshiba hard drive, serial number ▮▮▮▮▮▮▮;

6. WD Elements hard drive, serial number ▮▮▮▮▮▮▮;

7. "Blackphone" mobile phone, IMEI #▮▮▮▮▮▮▮▮;

8. NEXUS LG mobile phone, LG-H791;

9. Sony digital recorder, model ICD-UX560; and

10. Mophie hard drive, serial number ▮▮▮▮▮▮.

This warrant authorizes the physical search of Item #1 and authorizes the forensic examination of the listed digital media for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B "REDACTED"

### Particular Things to be Seized

All information described below that constitutes fruits, evidence, and instrumentalities of the violations identified in the Affidavit shall be subject to this Search Warrant:

1.   Phone call documentation, including incoming, outgoing, missed, or attempted calls along with contact lists and their related identifying information and phone numbers, including deleted contacts along with data access and modification records, which may indicate when or how data is stored or used.

2.   Electronic message documentation and content, including sent, unsent, received, or attempted messages whether they are texts, tweets, images, videos, e-mails, or some other form of electronic message, from any proprietary cellular software, or third party application including, but not limited to, applications such as Facebook, Facebook Messenger, Snapchat, and WhatsApp, among others.

3.   Subscriber and account information.

4.   Digital images, including photographs and/or videos which may tend to show ownership of the electronic devices along with evidence of bank records, wire transfer documents, transaction documents, money order documents, cashier check documents, ledgers, lists of other bank accounts, stolen PII, and other electronic records or media (CDs, DVDs, flash drives, etc.), contact information of others involved in the conspiracy to commit wire fraud and/or conspiracy to launder monetary instruments and the fruits of other crimes, and other evidence relating to a violation of 18 U.S.C. §§ 1341 (Mail Fraud), 1343 (Wire Fraud), 1349 (Conspiracy), and 1956 and 1957 (Money Laundering and Conspiracy).

5.   Digital documents showing who used or owned the electronic devices at the time the things described in this warrant were created edited, or deleted, including, but not limited to, bills or other business-related documents, correspondence, photographs, phonebooks, documents, and browsing history including saved usernames and passwords.

6.   Records that show the use of the internet to communicate with co-conspirators, including, but not limited to, records of Internet Protocol (IP) addresses used, firewall logs, caches, browser history, cookies, "bookmarked" or "favorite" web pages, search terms the user entered into any Internet search engine, and records of user-typed web addresses.

7.     Voicemail documentation and content which may tend to show the identity of co-conspirators and/or the objects of the conspiracies to commit wire fraud and/or launder monetary instruments.

8.     Global Positioning Satellite (GPS) data which may show travel to or from a location in a particular place and time, which may establish the location of suspect residences and storage facilities, identify co-conspirators, meeting locations, patterns of travel, or associate the user of the device to the offenses listed above in Paragraph 4, or link them to other crimes heretofore unknown.

9.     Digital documents or other items tending to identify co-conspirators, clients, investors, customers, and sources, including, but not limited to, contacts, electronic messages, notes, memoranda, photographs, address, and phone books, maps, organizers, or lists of names.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

The Government agrees to request another search warrant from the Court before it reviews data from the electronic storage media or electronically stored information seized pursuant to this warrant for purposes unrelated to this investigation.